# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

TANYA ALFREDSON,
      Appellant,

v.

DEPARTMENT OF STATE,
      Agency.

DOCKET NUMBER
DC-1221-16-0206-W-1

DATE: April 17, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

Chungsoo Lee, Feasterville, Pennsylvania, for the appellant.

Marianne Perciaccante, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed this individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**DISCUSSION OF ARGUMENTS ON REVIEW**

¶2　　Between 2008 and 2015, the appellant held a series of term appointments with the agency's Foreign Service Institute (FSI). *E.g.*, Initial Appeal File (IAF), Tab 13 at 5-10, 112, 138, 167. The majority of this time she held the position of Foreign Affairs Officer, but the agency converted her to the position of Supervisory Foreign Affairs Officer in December 2013, subject to a probationary period. *Id.* at 138, 167. About a year later, the agency decided that the appellant had not successfully completed her supervisory probationary period and, therefore, returned her to her original position. *Id.* The appellant separated from the agency effective May 2015. *Id.* at 112.

¶3　　In March 2012, while still employed with the agency, the appellant contacted the agency's Office of Inspector General (OIG) to express various concerns. IAF, Tab 8 at 11-15. Then, in July 2013, the appellant filed a complaint with the Office of Special Counsel (OSC), alleging that the agency was retaliating against her for her engagement with OIG. *Id.* at 16-18. She continued to communicate with OSC about further allegations of reprisal in November 2014, May 2015, and June 2015. *Id.* at 21-50. In her communications, she indicated that her first-level supervisor was aware of, and was retaliating against the appellant for, her OIG and OSC complaints. *Id.* at 26, 48.

¶4　　After the appellant received OSC's October 2015 notice that it was closing its investigation, she filed the instant appeal with the Board, raising various allegations pertaining to her employment. IAF, Tab 1 at 4-6. She then filed two additional pleadings with further allegations of wrongdoing. IAF, Tabs 3-4. The administrative judge construed the allegations as an IRA appeal, provided the corresponding jurisdictional standards, and ordered the appellant to meet her jurisdictional burden. IAF, Tab 6.

¶5　　After both parties responded to the jurisdictional order, IAF, Tabs 8-9, 11, the administrative judge dismissed the appeal for lack of jurisdiction, without holding the requested hearing, IAF, Tab 18, Initial Decision (ID).

The administrative judge found that the appellant failed to nonfrivolously allege that she made any disclosure protected under 5 U.S.C. § 2302(b)(8) or that any disclosure was a contributing factor in any alleged personnel action. ID at 9-18. The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has filed a response. PFR File, Tab 3.

<u>The appellant failed to prove or nonfrivolously allege that she was subjected to an otherwise appealable action.</u>

¶6    Again, the administrative judge construed the appellant's allegations as an IRA appeal. IAF, Tab 6. However, after the administrative judge explained the corresponding jurisdictional burden over an IRA appeal, the appellant responded in part by asserting that she had additional allegations of "'otherwise appealable' actions or non IRA whistleblower retaliation claims." IAF, Tab 8 at 4, Tab 9 at 3. In doing so, the appellant included the following:

a.  Since 2012 to May 2015 Appellant was denied the higher grade wages (including multiple [quality step increases]) for the higher level work she performed as Deputy Director/Foreign Affairs Officer, Political Training Division, Foreign Service Institute, Department of State, in retaliation for her disclosure activities.

b. On March 22, 2015 Appellant was denied her Within Grade Increase (WGI).

c. On November 30, 2014 Appellant was demoted from Supervisory Foreign Affairs Officer to Foreign Affairs Officer.

IAF, Tab 8 at 4 (internal citations omitted). The appellant suggested that she would present arguments and facts concerning those matters at a later date, because the administrative judge thus far only had requested that she meet her IRA jurisdictional burden. *Id.* To the extent that the appellant intended to identify an otherwise appealable action, separate from her IRA appeal, the administrative judge failed to address these allegations.

¶7    In the interest of further developing the record, the Office of the Clerk of the Board issued a show cause order, instructing the appellant to present argument and evidence to explain why the aforementioned matters are otherwise

appealable actions within the Board's jurisdiction, outside the context of her IRA appeal. PFR File, Tab 4. The appellant failed to respond. For the reasons described below, we find that the appellant has failed to prove or even nonfrivolously allege that the Board has jurisdiction over an otherwise appealable action. *See* 5 C.F.R. § 1201.56(b)(2)(i)(A) (recognizing that, with exceptions not pertinent here, an appellant must prove jurisdiction by preponderant evidence); *see also Francis v. Department of the Air Force*, 120 M.S.P.R. 138, ¶ 14 (2013) (recognizing that an appellant is entitled to a jurisdictional hearing if she presents nonfrivolous allegations of Board jurisdiction).

¶8        Under chapter 75, the Board generally has jurisdiction to review an appeal from a removal, a suspension of more than 14 days, a reduction in grade or pay, or a furlough of 30 days or less. 5 U.S.C. §§ 7512(1)-(5), 7513(d), 7701(a). Chapter 75 does not, however, provide for Board jurisdiction over the denial of a performance-related award. *See* 5 U.S.C. § 7512(1)-(5); *see also, e.g.*, *Clark v. Department of the Air Force*, 111 M.S.P.R. 477, ¶ 9 (2009) (recognizing that the Board generally lacks jurisdiction over an appeal of a denial of a performance-related award, such as a quality step increase (QSI)); *Riojas v. U.S. Postal Service*, 88 M.S.P.R. 230, ¶ 7 (2001) (recognizing that a bonus or premium pay is not part of basic pay and the loss of or reduction in such pay is not appealable to the Board as a reduction in pay). Accordingly, while the first of the aforementioned allegations asserts that the appellant was denied higher wages, including a QSI, we find that she has failed to prove or nonfrivolously allege that this was an adverse action appealable under chapter 75.

¶9        The second allegation, concerning the alleged denial of a WGI, also fails. With exceptions not pertinent here, the Board only has jurisdiction over an employee's appeal from the agency's withholding of a within-grade increase if the employee sought reconsideration of the agency's decision to withhold the increase and the agency affirmed its initial decision on reconsideration. 5 U.S.C. § 5335(c); *Goines v. Merit Systems Protection Board*, 258 F.3d 1289, 1292 (Fed.

Cir. 2001). The appellant's bare assertion that she was denied a WGI, without any additional information in support of that claim, does not prove or nonfrivolously allege that the purported denial of the WGI falls within the Board's limited jurisdiction over such matters.

¶10 The third allegation, concerning a purported demotion, similarly fails. For a reassignment to fall within the Board's adverse action jurisdiction under chapter 75, it must result in a reduction in grade or a reduction in pay. *Wilson v. Merit Systems Protection Board*, 807 F.2d 1577, 1580 (1986) (recognizing that "[a] reduction in responsibility without a concurrent reduction in grade or pay . . . is not appealable to the Board"); *Loggins v. U.S. Postal Service*, 112 M.S.P.R. 471, ¶ 10 (2009) (reaching the same conclusion). Despite the appellant's assertion that she was demoted from Supervisory Foreign Affairs Officer to Foreign Affairs Officer, the evidence she provided demonstrates that her grade and salary remained the same. IAF, Tab 3 at 10. Therefore, we find that the appellant has failed to prove or nonfrivolously allege that this change in position was an appealable adverse action.

## The appellant failed to present nonfrivolous allegations that she made protected disclosures.

¶11 We now turn to the issue of whether the Board has jurisdiction over the appellant's allegations as an IRA appeal. Under the Whistleblower Protection Enhancement Act of 2012 (WPEA), the Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before OSC and makes nonfrivolous allegations that (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take, or threaten to take or fail to take, a personnel action as defined by 5 U.S.C. § 2302(a). *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); *see* 5 C.F.R. § 1201.4(s) (defining a nonfrivolous allegation as an assertion that,

if proven, could establish the matter at issue). The administrative judge found that the appellant did not meet this burden. ID at 9-18.

¶12     Among other things, the administrative judge found that the appellant failed to present nonfrivolous allegations that any of the disclosures she identified were protected. *Compare* IAF, Tab 8 at 7-8, *with* ID at 9-16. For example, the administrative judge noted that while the appellant alleged that she disclosed "inappropriate [Human Resources] activities," she failed to explain who engaged in those activities, what the activities were, or why they were inappropriate. ID at 10; *see Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 14 (2014) (recognizing that a disclosure must be specific and detailed, not a vague allegation of wrongdoing).[2]

¶13     On review, the appellant reasserts her allegation of whistleblower retaliation, generally. PFR File, Tab 1 at 4-5. However, while her petition does contain some details about the alleged retaliatory personnel actions, it does not contain any substantive argument or evidence concerning the nature of her alleged disclosures. *See id*. Having reviewed this and her pleadings below, we agree with the administrative judge's conclusion that the appellant did not

---

[2] During the time that followed the initial decision, the U.S. Court of Appeals for the Federal Circuit explained that "the question of whether the appellant has non-frivolously alleged protected disclosures that contributed to a personnel action must be determined based on whether the employee alleged sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1369 (Fed. Cir. 2020). Therefore, "[t]he Board may not deny jurisdiction by crediting the agency's interpretation of the evidence as to whether the alleged disclosures fell within the protected categories or whether the disclosures were a contributing factor to an adverse personnel action." *Id.*

We recognize that the administrative judge referred to the agency's arguments regarding the question of whether the appellant presented nonfrivolous allegations of a protected disclosure. ID at 10, 13-16 (citing IAF, Tabs 11, 13). But his doing so appears to be permissible, even under *Hessami*. The administrative judge merely referred to the agency's arguments to note that the appellant failed to provide the level of specificity required regarding her alleged disclosures even after having the opportunity to respond to the agency's arguments about the same. *Id.*

present nonfrivolous allegations that she made a disclosure protected by section 2302(b)(8).

<u>The appellant nevertheless met her jurisdictional burden regarding at least some of her other claims.</u>

¶14     Although the appellant failed to present nonfrivolous allegations of a disclosure protected by section 2302(b)(8), that does not end our analysis. As mentioned above, an appellant may establish jurisdiction in an IRA appeal regarding a protected disclosure described under 5 U.S.C. § 2302(b)(8) *or* protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). The administrative judge recognized this additional basis of jurisdiction in the jurisdictional order but did not consider whether the appellant's allegations implicated such protected activity in the initial decision. *Compare* IAF, Tab 6 at 3, *with* ID at 6-7. For the reasons that follow, we find that the appellant met her jurisdictional burden for some of her claims pertaining to reprisal for engaging in protected activity, and the administrative judge must make new jurisdictional findings regarding some others.

*The appellant nonfrivolously alleged that she engaged in protected activity.*

¶15     In addition to the alleged disclosures addressed above, the appellant alleged below that she made disclosures to the agency's OIG on March 30 and July 11, 2012. IAF, Tab 8 at 7-8. In addition, she presented six "Claims of Whistleblower Retaliation," which seem to indicate that the appellant filed claims with or otherwise discussed additional allegations of wrongdoing with the OIG and OSC from July 2013 to June 2015. *Id.* at 8-9. The administrative judge erred by narrowly construing the appellant's alleged March and July 2012 disclosures as potentially protected under only 5 U.S.C. § 2302(b)(8), ID at 10-16, and by failing to address her July 2013 to June 2015 OIG and OSC disclosures. Both sets of allegations implicated activity protected under 5 U.S.C. § 2302(b)(9).

¶16     Protected activity under section 2302(b)(9)(A)(i) includes "the exercise of any appeal, complaint, or grievance right granted by any law, rule, or

regulation . . . with regard to remedying a violation of [section 2302(b)(8)]." 5 U.S.C. § 2302(b)(9)(A)(i); *Bishop v. Department of Agriculture*, 2022 MSPB 28, ¶ 15. Protected activity under section 2302(b)(9)(C) includes "cooperating with or disclosing information to the Inspector General . . . of an agency, or the Special Counsel, in accordance with applicable provisions of law." 5 U.S.C. § 2302(b)(9)(C); *see Salerno*, 123 M.S.P.R. 230, ¶ 12. This latter provision covers an employee's disclosures to OIG or OSC, even if the disclosure is not protected under section 2302(b)(8). *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 62.

¶17    Though not recognized by the administrative judge below, we find that the appellant presented nonfrivolous allegations, and even supportive evidence, that she engaged in activity protected by section 2302(b)(9)(A)(i) in her communications with OSC and that she engaged in activity protected by 2302(b)(9)(C) in her communications with the agency's OIG. The appellant included evidence of her contact with OIG, beginning in March 2012, IAF, Tab 8 at 11-15, as well as her various correspondence with OSC, which began with her July 2013 complaint of reprisal and ended with OSC's October 2015 closeout letter, *id.* at 16-54. Therefore, we conclude that the appellant met this element of her burden of nonfrivolously alleging that she engaged in protected activity.

> *The appellant nonfrivolously alleged that her protected activity was a contributing factor in at least some of the alleged personnel actions against her.*

¶18    Having found that the appellant nonfrivolously alleged that she engaged in activity protected by sections 2302(b)(9)(A)(i) and (C), we next decide whether the appellant nonfrivolously alleged that this activity was a contributing factor in the matters she describes as retaliatory.

¶19    To satisfy the contributing factor criterion at the jurisdictional stage of an IRA appeal, the appellant only need raise a nonfrivolous allegation that the

fact of, or the content of, the protected disclosure or activity was one factor that tended to affect the personnel action in any way. *See Salerno*, 123 M.S.P.R. 230, ¶ 13 (so stating in the context of alleged protected disclosures). One way to establish this criterion is the knowledge/timing test, under which an employee may nonfrivolously allege that the disclosure or activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official who took the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.* A personnel action taken within 1 to 2 years of an appellant's activity satisfies the timing prong of this test. *See id.*, ¶ 14.

¶20 Throughout, the appellant has been represented, yet her allegations have been lengthy, convoluted, and difficult to follow. PFR File, Tab 1 at 5; IAF, Tab 1 at 3, 6, Tab 3 at 4-9, Tab 4 at 4-5. In any event, we have interpreted her pleadings in favor of finding jurisdiction over this IRA appeal. *See Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 6 (stating that any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of finding jurisdiction). Therefore, we have considered the 24 alleged retaliatory personnel actions (actions 1-24) that the appellant identified below in response to the administrative judge's jurisdictional order.[3] IAF, Tab 8.

¶21 We have located instances of the appellant asserting that her direct supervisor from July 2013 to May 2015, identified here as Supervisor A, frequently asked the appellant about her OIG and OSC filings, seeking specific details about the same, beginning just after she took over the position supervising the appellant. IAF, Tab 3 at 5, Tab 8 at 26, 48. This allegation suggests that Supervisor A had knowledge of at least some of the appellant's protected activity.

---

[3] As we discuss the appellant's numbered list of alleged retaliatory personnel actions, 1-24, we are using her numbering for purposes of clarity and ease of reference.

Turning back to the appellant's list of 24 alleged personnel actions, some directly implicate this individual during the relevant period. IAF, Tab 8 at 5-7. This includes the appellant's allegation that Supervisor A denied her a QSI in January 2014 (action 6), "interfered with course date selections for [the] appellant" in February and March 2014 (action 8), left the appellant off emails she had historically been copied on throughout 2013 and 2014 while also scolding the appellant for directly emailing leadership (action 9), did not include the appellant in scheduled meetings throughout 2014 (action 10), assigned the appellant a task in July 2014 that others could have done and then criticized the appellant about the same (action 13), "disciplined" the appellant in an email for not being available to talk after work hours in August 2014 (action 16), and "failed" the appellant during her supervisory probationary period in September 2014, which led to her losing her supervisory role (actions 17-19). *Id.* at 5-7. Outside of her list of alleged personnel actions, the appellant's pleadings also blamed Supervisor A for "ongoing harassment, erosion of duties, undermining of her supervisory role, denial of higher wages for higher level work, [and] a negative mid-year performance review issued on Aug[ust] 1, 2014" (action 25).[4] *Id.* at 8. Each of these alleged actions occurred within the 1 to 2 years in which the Board has found the knowledge/timing test satisfied. *See supra* ¶ 18.

¶22    Pieced together, we find that the appellant's assertion that Supervisor A probed the appellant about her OIG and OSC filings, IAF, Tab 3 at 5, Tab 8 at 26, 48, along with her allegations of retaliation that specifically name this

---

[4] This allegation is not included in the appellant's list of 24 alleged personnel actions. It is a separate allegation within the same pleading. For the sake of clarity, we are nevertheless labeling it "action 25."

We recognize that action 25 may very well encompass some of the more specific allegations within the appellant's list of 24 alleged retaliatory actions. But it remains relevant to distinguish action 25, since it specifically named Supervisor A as the responsible party, while many within the appellant's list of 24 did not specifically identify Supervisor A or any particular official.

supervisor as involved in the period that followed, IAF, Tab 8 at 5-8, constitute nonfrivolous allegations that her protected activity was a contributing factor in these alleged personnel actions under the knowledge/timing test.

¶23     Piecing together different portions of the appellant's filings, she has also alleged that her OIG complaint led to OIG forcing two agency officials, the FSI Executive Office Director and the Director of Human Resources, to recategorize the appellant's position as supervisory, and these same officials then unsuccessfully attempted to downgrade her position, in April 2013 (action 4). IAF, Tab 3 at 4-5, Tab 8 at 50.[5]  For purposes of the nonfrivolous allegation standard, we are interpreting the appellant's assertion that her complaint led to OIG forcing these officials to act as further indicating that these officials knew that the appellant had complained to OIG.  *See Skarada*, 2022 MSPB 17, ¶ 6. Therefore, this, too, constitutes nonfrivolous allegations that her protected activity was a contributing factor under the knowledge/timing test.

*The appellant nonfrivolously alleged that at least some of the alleged personnel actions are covered under the statute.*

¶24     Having found that the appellant presented nonfrivolous allegations that she engaged in protected activity that was a contributing factor in at least some matters (actions 4, 6, 8-10, 13, 16-19, 25), we must now decide whether the appellant nonfrivolously alleged that these matters constitute covered personnel actions.

---

[5] The appellant specifically named these same officials in one other alleged retaliatory personnel action, an attempted termination of the appellant's employment (action 1). IAF, Tab 8 at 5.  However, the appellant described this as occurring in 2009, which predates the appellant's OIG and OSC activity.  For that reason, the appellant's protected activity could not have been a contributing factor in that alleged personnel action.  *Davis v. Department of Defense*, 106 M.S.P.R. 560, ¶ 12 (2007) (stating that because the complained-of personnel action predated the protected disclosure, there was no way the disclosure could have contributed to the personnel action), *aff'd per curiam*, 278 F. App'x 1009 (Fed. Cir. 2008).

¶25 The whistleblower statute specifically lists the types of covered personnel actions as including (i) appointments; (ii) promotions; (iii) actions under 5 U.S.C. chapter 75 or other disciplinary or corrective actions; (iv) details, transfers, or reassignments; (v) reinstatements; (vi) restorations; (vii) reemployments; (viii) performance evaluations under 5 U.S.C. chapter 43 or under Title 38; (ix) decisions regarding pay, benefits, or awards, or involving education or training if it reasonably may be expected to lead to an appointment, promotion, performance evaluation, or other action described in 5 U.S.C. § 2302(a)(2)(A); (x) decisions to order psychiatric testing or examination; (xi) implementations or enforcements of any nondisclosure policy, form, or agreement; and (xii) any other significant changes in duties, responsibilities, or working conditions. 5 U.S.C. § 2302(a)(2)(A); *Spivey v. Department of Justice*, 2022 MSPB 24, ¶ 6. The Board recently acknowledged that the last of these should be interpreted broadly but that to constitute a "significant change in duties, responsibilities, or working conditions," the agency action must have practical consequences for the employee. *Skarada*, 2022 MSPB 17, ¶ 15. To amount to a "significant change" under section 2302(a)(2)(A)(xii), an agency action must have a significant impact on the overall nature or quality of an employee's working conditions, responsibilities, or duties. *Id.* The Board will consider alleged agency actions both collectively and individually in this context. *Id.*, ¶ 16.

¶26 Once again, the appellant's pleadings are difficult to follow, and many of her allegations are conclusory. Nevertheless, we find that she presented nonfrivolous allegations of retaliatory covered personnel actions by alleging that the FSI Executive Office Director and the Director of Human Resources unsuccessfully attempted to downgrade her position in April 2013 (action 4). *Supra* ¶ 22; IAF, Tab 3 at 4-5, Tab 8 at 50. She also presented nonfrivolous allegations of retaliatory covered personnel actions by alleging that Supervisor A denied her a QSI in January 2014 (action 6) and failed the appellant as to her probationary period in September 2014, which led to the recommendation that she

not be retained in her supervisory position and the subsequent return to her former position (actions 17-19). *Supra* ¶ 21; IAF, Tab 8 at 6-7. The attempt to downgrade her position and the denial of a QSI (actions 4 and 6) constituted decisions or threatened decisions concerning pay and/or benefits. 5 U.S.C. § 2302(a)(2)(A)(ix). Likewise, actions 17-19, taken together, amounted to a reassignment. 5 U.S.C. § 2302(a)(2)(A)(iv). Accordingly, we find that the appellant has made nonfrivolous allegations that these actions fall within the statutory definition of personnel actions.[6]

¶27 For the other matters that the appellant has specifically attributed to Supervisor A (actions 8-10, 13, 16, and 25), the appellant has provided little explanation about their significance. IAF, Tab 8 at 5-8. Collectively, though, we find that they suffice for purposes of a nonfrivolous allegation of a significant change in duties, responsibilities, or working conditions. *See Skarada*, 2022 MSPB 17, ¶¶ 17-18 (finding that allegations than an employee was directed to stop attending leadership meetings and performing extra duties, and excluded from the hiring process of new employees was a nonfrivolous allegation of a significant change in duties or responsibilities, as well as concluding that additional instances of alleged mistreatment, when considered cumulatively, constituted a nonfrivolous allegation of a significant change in working conditions).

*The appellant met the exhaustion requirement for the above claims.*

¶28 We have found that the appellant presented nonfrivolous allegations that she engaged in activity protected under the WPEA and that this activity was a contributing factor in at least some covered personnel actions. Therefore, we turn to whether the appellant proved that she exhausted these allegations with OSC.

---

[6] It is arguable that actions 4, 6, and 17-19 also fall within the definitions of other personnel actions in 5 U.S.C. § 2302(a)(2)(A), but because we find that these actions are all decisions, or threatened decisions, that concern pay and/or benefits we need not determine whether any other subsections in section 2302(a)(2)(A) are applicable.

¶29     An appellant may demonstrate exhaustion through her initial OSC complaint or correspondence with OSC. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 11. She need only show that she advised OSC of the "core of [her] retaliation claim," thus giving "OSC sufficient basis to pursue an investigation." *Briley v. National Archives and Records Administration*, 236 F.3d 1373, 1377-78 (Fed. Cir. 2001); *see Chambers*, 2022 MSPB 8, ¶ 10 (explaining that an appellant may give a more detailed account of his whistleblowing activities before the Board than he did to OSC (citing *Briley*, 236 F.3d at 1378)).

¶30     For the exhaustion element of the appellant's burden, we have reviewed all the correspondence between her and OSC. IAF, Tab 8 at 16-54. This correspondence includes her repeated invocation of her OIG and OSC complaints as the bases for the agency retaliating in various ways. *Id.* at 17-18, 22, 24-27, 30, 33, 36-38, 40-42, 48-50. Among them are the appellant's allegations that the agency retaliated by unsuccessfully attempting to downgrade her position in April 2013 (action 4), *id.* at 17-18, 24, 50, denying the QSI in January 2014 (action 6), *id.* at 23-24, 29, 53, failing the appellant as to her probationary period in or around September 2014, which led to her reassignment to a nonsupervisory role (actions 17-19), *id.* at 38, 49, 52-53, and harassing the appellant in ways that are generally consistent with the appellant's allegations in this appeal about harassment or other conspicuous changes to her role (actions 8-10, 13, 16, and 25), *id.* at 21-22, 25, 27-28. We therefore find that the appellant proved exhaustion.

On remand, the administrative judge should make new jurisdictional findings regarding the other personnel actions the appellant alleged.

¶31     In the passages above, we found that the appellant met her jurisdictional burden for several of the numerous alleged personnel actions she listed below, but many more remain. For those that remain, the appellant's list did not provide a detailed or specific explanation regarding the contributing factor criterion.

Instead, she summarily stated that the agency denied her a QSI in February 2013 (action 2), denied a 5-year contract in February 2013 (action 3), placed her under a supervisory probationary period in December 2013 (action 5), asked her to make up for absent employees (action 7), denied her another QSI in April 2014 (action 11), admonished her for failing to provide advanced notice of sick leave in July 2014 (action 12), assigned her to run a class with inadequate notice (action 14), scolded her for not carrying out an order (action 15), rated her "not successful" for the 2014 rating period (action 20), denied her a WGI (actions 21-23), and denied her higher wages throughout 2012-2015 (action 24). *Id.* at 5-7.

¶32      Absent from these are, inter alia, any specific identification of who was involved in these matters and whether they had knowledge of the appellant's protected activity for purposes of satisfying the contributing factor element under the knowledge/timing test. However, in addition to the knowledge/timing test, the Board will also consider other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether these individuals had a desire or motive to retaliate against the appellant. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶¶ 15-16 (2012).

¶33      On remand, the administrative judge should seek clarification from the parties regarding these additional alleged personnel actions to determine if the appellant has nonfrivolously alleged that her protected activity was a contributing factor under the knowledge/timing test or *Dorney*. To the extent necessary, the administrative judge must also determine whether the appellant met the rest of her jurisdictional burden for these claims.

> On remand, the administrative judge must adjudicate those claims that fall within the Board's jurisdiction.

¶34    In conclusion, the appellant has failed to establish jurisdiction over the agency's various alleged wrongdoings as an otherwise appealable action. The appellant also failed to nonfrivolously allege that she made any protected disclosures. But the appellant did present nonfrivolous allegations that she engaged in protected activity and that this protected activity was a contributing factor in at least some personnel actions covered under whistleblower reprisal statutes—the attempted downgrade of her position in April 2013 (action 4), the denial of a QSI in January 2014 (action 6), the failing of the appellant as to her supervisory probationary period, which led to her reassignment (actions 17-19), and the appellant's claim of a significant change in duties, responsibilities, or working conditions at the hands of those with knowledge of her protected activity (actions 8-10, 13, 16, and 25). The appellant met the exhaustion requirement for the same.

¶35    In cases involving multiple alleged disclosures or activities and multiple alleged personnel actions, when an appellant makes a nonfrivolous allegation that at least one alleged personnel action was taken in reprisal for at least one alleged protected disclosure or activity, she establishes Board jurisdiction over her IRA appeal. *See Peterson v. Department of Veterans Affairs*, 116 M.S.P.R. 113, ¶ 8 (2011). We therefore find that the appellant established jurisdiction. Specifically, the appellant established jurisdiction over actions 4, 6, 17-19, and, when considered together, actions 8-10, 13, 16, and 25. The administrative judge must adjudicate those claims on the merits. For actions 2-3, 5, 7, 11-12, 14-15, and 20-24, the administrative judge must make new jurisdictional findings to decide whether those claims will also be adjudicated on the merits. *See Thurman v. U.S. Postal Service*, 2022 MBPB 21, ¶ 22 (recognizing the concept that the Board's administrative judges are in the best position to, among other things, develop the record and simplify the issues).

## **ORDER**

¶36      For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:                    /s/ for
                                 _____
                                 Jennifer Everling
                                 Acting Clerk of the Board

Washington, D.C.